**STATE of Missouri,
Plaintiff–Respondent,**

v.

**William FOSTER, Defendant–Appellant.**

**No. 41012.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 21, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 14, 1980.

Application to Transfer Denied
Dec. 15, 1980.

Neal P. Murphy, St. Louis, William H. Jennings, II, Clayton, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Nancy D. Kelley, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

WEIER, Judge.

Ray Charles Canady was employed as a security guard. He was stationed at a clinic for the City of St. Louis at Grand and Washington Avenues. The defendant William Foster approached Canady on October 26, 1977, at his place of employment after telling an associate that he was going to get the guard's gun. Foster was holding a .22 caliber pistol and told Canady to hold up his hands. Canady moved toward Foster and Foster thereupon fired shots at the guard. When Canady fell to the ground, Foster picked up the guard's .38 caliber pistol and shot him in the face with the guard's pistol. Eight missiles were recovered from the victim's body. Seven of these were from a small caliber weapon and another was from a larger caliber weapon. The medical examiner for the city testified that seven of the nine wounds were fatal in nature and that Canady died as a result of multiple gun shot wounds with extensive internal injury and hemorrhage.

Foster was convicted of capital murder, robbery in the first degree and armed criminal action. He was sentenced to life imprisonment to serve a minimum of fifty years without probation or parole, thirty years on the charge of robbery consecutive to the murder sentence and thirty years on the armed criminal action consecutive to the thirty years imposed for robbery.

Defendant's first contention on appeal asserts that the trial court erred in overruling defendant's objection to a part of the State's closing argument wherein the State's attorney misstated the law to the jury as to the burden of proof. We have examined carefully that portion of the argument in which it is alleged such statements are made. In this portion of the argument counsel was attempting to explain that anyone who aided or abetted another in committing a crime was equally guilty with the one who may have committed certain acts which were part of the essential elements of the crime provided the defendant knowingly acted with the other person in the commission of the crime. At one point counsel for the State stated that the State did not have to prove that the defendant "did every element." Objection was made and State's counsel then finished by saying that he only had to prove that the defendant knowingly did it alone or knowingly with others and acting together with a common purpose.

■ In considering this charge of prejudicial error we note the instructions hypothesizing the crimes charged against the defendant contained phrases which directed the jury to determine before finding defendant guilty that he acted either alone or knowingly and with common purpose together with one or more others in the conduct referred to in the instruction. This is in accord with the mandate of the approved instructions contained in MAI–CR. We can see no attempt to do more than to call these portions of the instructions to the attention of the jury in State's argument. This was a correct statement of the law and we find no abuse of discretion by the trial court in overruling the objection. *State v. Zweifel*, 570 S.W.2d 792, 794[3] (Mo.App.1978). This point is ruled against the defendant.

■ The next two points relied on are directed toward use of witnesses who testified to crimes of the defendant preceding and after the crimes charged in the indictment, that is, the robbery and killing of Ray Charles Canady. The first of the two points is directed toward the action of the trial court in overruling defendant's oral motion *in limine* to bar three witnesses for the State from testifying because their testimony related to proof of other crimes not related to the case in issue. It is well–settled law that to preserve for review the admission of evidence complained of in a motion *in limine* an objection must be made at trial. *State v. Johnson*, 586 S.W.2d 437, 440[4] (Mo.App.1979). Even though the point is not properly raised, we note in the transcript that objections were made to the introduction of testimony by these witnesses at trial for the same reason and we will consider the point on its merits with respect to the introduction of evidence of other crimes by the testimony of these witnesses. Because Point III is also directed to the testimony of another witness for the same reason, that is; because it tended to establish defendant's identity as the perpetrator

of prior and subsequent robberies, we will consider the problem there involved with that in Point II.

■ Proof of the commission of a separate crime is not admissible unless it has a legitimate tendency to directly establish the defendant's guilt of the crime charged. *State v. Quigley*, 591 S.W.2d 740, 742–743[2] (Mo.App.1979). If the evidence of another crime tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or the identity of the person charged with the commission of the crime for which he is on trial, such evidence is competent in the trial of the crime charged. *State v. Mitchell*, 491 S.W.2d 292, 295[1] (Mo. banc 1973); *State v. Harlston*, 565 S.W.2d 773, 780[11] (Mo.App.1978). The test of whether evidence of other distinct crimes falls within any of the exceptions to the general rule is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact and issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. Because of the danger of misleading a jury to convict for the crimes charged by parading a number of other illegal acts that were performed by the accused, the admission of such evidence must be subjected by the court to rigid scrutiny. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954).

Here the State seeks to justify the admission of the testimony with regard to other offenses that were allegedly committed by the defendant because the testimony objected to proved motive for the robbery and killing of the guard, established the identity of the defendant as the perpetrator of the offenses charged and established a common design or plan which gave credence to the testimony of certain witnesses, particularly an accomplice, that the murder and robbery were all a part of this design or plan established by that testimony. We examine the evidence to determine the validity of defendant's contentions.

The events which are encompassed in the evidence spread over a period of twenty–one days. On October 6, 1977, Tony Terry and James Stone entered the Field Street Post Office armed with a .22 caliber pistol supplied by the defendant and took money orders and a money order machine along with a substantial amount of money. Both of them tied people up in the post office and after putting money orders and the money order machine in a bag they returned it to William Foster, the defendant, who remained outside while the holdup was in progress. Foster had previously coached them with respect to where the money would be located and where the money order machine with the money orders would be found. After rejoining Foster they returned to Foster's house and it was then discovered that an identification plate was missing from the money order machine. On October 26, 1977, while the same three were in Foster's automobile, Foster stated that he needed the plate to operate the money order machine and in order to obtain one they would have to rob another post office. They decided to rob a post office on Broadway in St. Louis that was relatively small and it was not surrounded by too many large businesses. In order to be properly armed, however, Foster decided he needed a larger gun. Thereafter Foster saw the victim Canady on a parking lot, stopped the automobile and told his two passengers to get out. He had the .22 revolver used in the first robbery with him at that time. He told the others that he was going to get the guard's gun. He ran over to the guard and told him to put his hands up. It appeared that the guard tried to grab Foster and when he did, Foster shot him with the .22. He then took the guard's gun, a .38 caliber revolver, and all three left the scene. They fled to Foster's house with Foster taking the guard's .38 caliber pistol with him. On October 27, 1977, the same three went to the Broadway Post Office armed with both pistols, entered the post office and obtained the validating plate for the money order machine along with rings and watches belonging to the persons in the post office. The .38 revolver was fired once during this robbery. Thereafter defendant attempted to run off some money orders one of which he signed with the name Ed-

gar Foster. The money order machine, money orders and other items necessary for the forging of the money orders were taken to Tony Terry's house where the police seized them on November 12, 1977.

The three witnesses to whom the motion *in limine* was directed were Klee Decker, L. A. Armstrong and Robert Leachman. Decker was an employee of the Broadway Post Office and substantiated the robbery that was committed there on October 27, 1977. He identified a watch as one taken from him during the robbery. He also testified to other facts concerning the occurrence and identified certain exhibits. Armstrong and Leachman were both postal inspectors. Armstrong identified defendant as being present at the postal inspector's office at a later time and that a watch identified by Decker as his was recovered from the commode in the rest room immediately after the defendant had used this facility. Leachman investigated the robbery at the Broadway Post Office and testified with respect to the government property that had been taken in that robbery. He also went to the home of Tony Terry at a later time and seized property that had been taken in the two post office robberies. Defendant's third point on appeal was directed to the testimony of State's witness Reginald Long. Long was a detective on the St. Louis Police Force and got defendant to the postal inspector's office when the watch was found in the commode. He was apparently the first one who observed the watch where it was found.

Under the facts of this case we believe that the evidence concerning the two post office robberies was vital in establishing the charges arising out of the robbery and killing of Ray Charles Canady. The first post office robbery produced a money order machine from which a vital plate was missing. It was therefore necessary to rob a second post office to obtain the missing plate. Without the plate the efforts in the first robbery would be rendered futile. When defendant saw Canady in the parking lot, he realized that here was the opportunity to obtain a large caliber gun to be utilized in the second robbery and proceeded to rob and kill Canady for that purpose. The evidence concerning the second robbery verified the facts of motive, intent and common scheme or plan. We do not believe that the trial court erred in failing to exclude the testimony of any of the four witnesses and so determine that the second and third points relied on are without merit.

We now turn to a matter that was not raised but which we believe requires our attention. In *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980), the court decided that armed criminal action and the underlying felony used to prove the armed criminal action were the same offense for double jeopardy purposes under the same evidence test. A conviction would therefore result in punishing a person twice for the same offense contrary to the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. We therefore hold that the conviction of armed criminal action was unconstitutional.

The convictions of capital murder and first degree robbery are affirmed and the conviction of armed criminal action is reversed.

STEWART, P. J., and SNYDER, J., concur.