**STATE of Missouri, Respondent,**

v.

**Gary Thomas HEFFNER, Appellant.**

**No. WD 32921.**

Missouri Court of Appeals,
Western District.

Sept. 21, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 2, 1982.

Application to Transfer Denied
Dec. 13, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jay A. Daugherty, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and KENNEDY and WASSERSTROM, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from jury conviction for robbery first degree in violation of § 569.020, RSMo 1978. The judgment is affirmed.

Appellant presents three points which charge error by the trial court in (1) admitting evidence of an in-court identification of appellant because it was the result of impermissible suggestion, (2) admitting evidence relative to his identification because such evidence exceeded the permissible exception to the "evidence of other crimes" exclusionary rule, and (3) in admitting a weapon because said weapon was not used in the crime for which appellant was prosecuted.

The sufficiency of the evidence is not challenged so a summary of the pertinent facts suffices. The record reveals the evidence is sufficient to support the verdict of guilty entered by the jury. At approximately noon, July 27, 1980, appellant drove a motor vehicle to the drive-up window of the "Milk Jug", a convenience store in Independence, Missouri. Appellant ordered some "Coke". As the clerk was preparing the order, appellant entered the store. Appellant pointed a "butcher knife" at the clerk, demanded money, and threatened her life. As the clerk was removing money from the cash register, appellant grabbed the money from her hands and fled. This encounter lasted about four minutes with the clerk and appellant being at about

arms-length from each other. Appellant's face was not covered although he had a beard and moustache. The clerk testified she observed appellant's face from the side and front in good lighting. This same clerk further testified she again saw appellant. This second encounter occurred on September 6, 1980, at about 1:30 p.m. when appellant drove the same vehicle to the drive-up window. Appellant ordered cigarettes. As the clerk was getting the order, appellant entered the store, this time pointing a sawed-off shotgun at the clerk. A demand for money accompanied by a threat to the clerk resulted in appellant's second robbery of the "Milk Jug". The clerk again observed appellant face-to-face and from the side for about four minutes. The clerk made a positive identification of appellant's vehicle. The police commenced their investigation by obtaining a physical description of appellant from the clerk, plus her selection of a photo of appellant from police records. On November 6, 1980, at about 2:00 p.m., a deputy sheriff of Jackson County observed appellant operating a motor vehicle on the wrong side of the road. The deputy stopped appellant's vehicle and, as the deputy approached the vehicle, he observed in plain view the butt end of a .410 sawed off shotgun, clothing, several beer bottles, and a butcher knife. Appellant was arrested for driving under the influence. The deputy also notified the Independence, Missouri, Police Department because appellant and his vehicle matched the description of the robbery suspect sought in the robberies of the Milk Jug.

At the preliminary hearing and at trial, the clerk made a positive in-court identification of appellant. She also testified she had observed an array of five photographs at the police station from which she selected appellant's photo. The clerk was cross-examined extensively on her description of appellant given to police, particularly with reference to appellant's hair. The only defense evidence was that of an employee of a local beauty school who testified that her records showed appellant had received a hair permanent in June of 1980. The jury returned its verdict, judgment was entered,

and this appeal followed the after trial motions.

Under point (1), appellant contends the trial court erred in admitting her identification because it was the result of impermissible suggestion. Appellant's contention rests upon three sub points: (a) the photo of appellant shown the clerk was different in format from the others shown the clerk, (b) her identification was unsubstantiated although there was another witness at the scene and the identity of this witness was known to the police, and (c) the description provided by the clerk did not match appellant's.

■ Appellant cites a battery of federal and Missouri decisions as applicable and controlling authority upon the issue of identification. These include *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Carter,* 572 S.W.2d 430 (Mo.1978); *State v. McGraw,* 571 S.W.2d 802 (Mo.App.1978); *State v. Dickerson,* 568 S.W.2d 559 (Mo. App.1978); *State v. Sanders,* 621 S.W.2d 386 (Mo.App.1981); and *State v. Purnell,* 621 S.W.2d 277 (Mo.App.1981) from which elements relative to proper and reliable identification have emerged. These elements are: (1) opportunity of the witness to view the perpetrator at the time of the commission of the offense, (2) the degree of attention by the witness, (3) the accuracy of the prior description by the witness; (4) the level of certainty by the witness at the time of confrontation, and (5) the length of time between the offense and confrontation.

■ From the foregoing, a basic rule has emerged that convictions based upon eye witness identification at trial following pre-trial identification will be set aside on that ground only if the identification procedure was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The foregoing rule has been held determinable from the "totality of the circumstances". See *Manson v. Breathwaite* 432 U.S. 98, 114, 97 S.Ct. 2243,

2253, 53 L.Ed.2d 140 (1977), *Carter* supra, *State v. Higgins* 592 S.W.2d 151, 160 (Mo. banc 1979).

Appellant suggests to this court that elements (1) and (2) above (i.e. opportunity of the witness to view the perpetrator at the time of the commission of the offense and the accuracy of the prior description by the witness) are lacking in the instant case, thus rendering the clerk's identification of appellant unreliable. As to element (1), appellant argues that there was no line-up identification, and that pre-trial identification was limited to scrutiny by the clerk of a photo array and observance of appellant at the preliminary hearing. As to the photos, it is appellant's contention that since the clerk was shown five photos and four were standard "mug shots", with the fifth a different type of photo of appellant; this was inherently impermissibly suggestive. Standing alone, such contention does not support appellant's argument. In addition, the record reveals the clerk testified to two encounters with appellant during which appellant committed two robberies from her person. The parties were as close as "arms length". These encounters lasted almost four minutes during which appellant's face was in plain view of the clerk both face-to-face and from a side view. In addition, there is no evidence upon this record that anyone suggested to the clerk that she select the photo of appellant. The record discloses the clerk made a positive identification of appellant both from the photo array and at trial. The record reveals extensive cross-examination of the clerk regarding her identification and her identification was consistent. There is no merit to sub (a) of point (1) above.

■ As to sub point (b) of point (1) above, appellant merely makes a declaration that the clerk's identification of appellant was not substantiated by any other witness, although the identity of another witness at the scene was known. This court can only conclude that appellant urges this court to adopt a rule that the clerk's testimony should or must have been substantiated or the failure to call this alleged witness constitutes further proof that the clerk's identification was the result of impermissible suggestion. This court concludes that neither suggestion has any merit, nor was there any requirement that any other witness be produced, as that fact relates to the main issue of reliability of the identification by the witness. Appellant's sub point (b) to point (1) is meritless.

■ Concerning sub point (c) to point (1), appellant contends that since the clerk and appellant had the two (four minute) encounters and she had an opportunity to observe appellant, her pre-trial description should closely match the appellant, but it did not.

From the testimony of the investigating officer, the record reveals the clerk described the robber (a few minutes after the robbery at the scene) as ". . . a white male, twenty-five to thirty years of age, height, about five-ten, weight, 165 pounds, with dark brown hair, medium complexion." The record also shows . . . "I have written down a blue baseball cap, blue and white striped tank top and blue jeans and, further description was collar length hair, full beard and sun tanned."

Appellant's attack upon the pre-trial identification does not rest upon a direct challenge to the height, weight, age, hair color or complexion because, other than the testimony of the officer noted above, this record contains no direct evidence of those characteristics. Appellant argues he possesses a tattoo on his left shoulder, a tattoo on his right shoulder, a third tattoo on right forearm, and concludes the clerk's failure to observe these characteristics supports the conclusion that her identification resulted from impermissible suggestion. Appellant takes the same approach regarding the description of appellant's hair by the clerk. The officer testified that his report contained the comment of "collar length hair" under the report heading of "Other Noticeable Characteristics", but he could not recall whether he entered the term, "collar length hair" or the clerk volunteered these words. Appellant then concludes that since he had a permanent producing curly hair, which, in

the opinion of the hair dresser, would last a long time, we should conclude that the clerk's description of his hair was not properly descriptive of his hair.

The fallacy in appellant's contention is twofold. First, the mere fact that the clerk's description failed to include *all details* about appellant (i.e., the tattoos), does not lead to the conclusion that the clerk's description was inaccurate. In addition to the testimony of the officer above, the clerk described appellant's hair as straight. Appellant seizes upon this point not by any direct evidence of the condition of his hair on the date of the offense, but rather, suggests to this court that evidence of his having received a "natural" hair permanent on June 24, 1980, would have been a distinguishing characteristic on the date of the offense. In the first instance, the evidence reveals that the permanent was received more than a month prior to the first offense (July 27, 1980). Second, the hair dresser witness, when asked, "How long does this process last?" answered, "It depends on the hair, but usually between two and six months. Two is about the minimum usually." Such evidence was not sufficient to support appellant's contention of impermissible suggestion.

When the entire record of this case is reviewed, it clearly establishes that the clerk had opportunity to view appellant during the commission of the robberies. The record also shows the clerk provided a sufficiently accurate pre-trial description of appellant. There is no merit to appellant's sub point (c) of point (1) above.

With reference to point (1) above, this court concludes there is no evidence of any impermissible suggestion relative to the identification of appellant, nor an impermissible suggestion giving rise to a very substantial likelihood of irreparable misidentification. There is no merit to appellant's point (1) and it is ruled against him.

Under point (2), appellant charges trial court error in admitting testimony by the clerk regarding the robbery of September 6, 1980, because the evidence adduced went beyond the permissible identification exception to the "evidence of other crimes" exclusionary rule. It is appellant's contention that the harm from this evidence outweighed its probative value and improperly injected the collateral issue of proof of a crime for which appellant was not on trial.

Appellant concedes there are exceptions to the rule which excludes evidence of other crimes. Appellant concedes one such exception is that proof of the commission of another crime is admissible if it tends to establish the *identity* of the accused. *State v. Peterson* 557 S.W.2d 691 (Mo.App.1977); *State v. King,* 588 S.W.2d 147 (Mo.App. 1979); *State v. Williams,* 584 S.W.2d 134 (Mo.App.1979); *State v. Harlston,* 565 S.W.2d 773 (Mo.App.1978); *State v. Barnett,* 611 S.W.2d 339 (Mo.App.1980). Appellant further concedes the applicable test to be whether the probative value of the evidence outweighs the prejudice an accused might suffer upon admission of such evidence. *State v. Williams,* 602 S.W.2d 209 (Mo.App.1980), *Barnett,* supra.

It must be observed that the challenge on this appeal is to admission by the trial court of extensive evidence of the second robbery (September 6, 1980) produced by the testimony of the clerk. This included identification evidence and admission of the sawed off shotgun. The record reveals no objection to this "extensive evidence". The only challenge made was that there had not been established by the evidence a "chain of custody" regarding the shotgun.

The record reveals that the clerk's testimony regarding the second robbery resulted from inquiry as to when she had observed appellant. The obvious purpose was to establish and reinforce her identification of appellant and to respond to cross-examination in the form of a challenge to the clerk's identification with regard to the second robbery.

The law in our state has been firmly established on this point, that if the proof of another separate and distinct crime has a legitimate tendency to directly establish the guilt of an accused upon the charge for which he is being tried, and if it tends to

establish motive, intent, absence of mistake, or accident, or a common scheme or plan, or the identity of the person charged, it is admissible. *Barnett,* supra.

 The evidence herein, through the testimony of the clerk, established that appellant robbed the "Milk Jug" on two occasions—July 27, 1980, and September 6, 1980. That testimony established that the robberies were committed in an identical manner except for the specific weapon used. The same testimony disclosed in both instances that the clerk viewed appellant for up to some four minutes' time, that the clerk observed appellant's vehicle in both instances and that the description of appellant was the same in both instances. The facts of this case bring it within the rule announced in *Peterson* regarding the identity of appellant. In addition, the evidence was admissible to show a common scheme or plan, as announced in *State v. Foster,* 608 S.W.2d 476 (Mo.App.1980). The testimony of the clerk in the instant case had an obvious legitimate purpose and a tendency to directly establish the motive and intent of appellant for the crime for which he was on trial. *Barnett.* It is within the discretion of the trial court to admit such evidence and its ruling will not be disturbed unless there is a clear showing of an abuse of that discretion. *Barnett.* It is evident from the record in this case that the probative value of the challenged evidence outweighed the prejudicial effect upon appellant. The trial court did not abuse its discretion in the admission of such evidence.

Point (2) is found to be without merit and is ruled against appellant.

Under his final point (3), appellant contends the trial court erred in admitting the shotgun into evidence because the weapon was not the weapon used in commission of the crime for which he was being tried.

 Again, it must be noted, the objection made to the introduction of the weapon was to the failure to show a chain of custody. Aside from a mere conclusion that the trial court erred, appellant offers no argument. Appellant fails to note that the weapon used was positively identified by the clerk. In addition, the rules and authorities discussed under point (2) above are equally applicable to the contention raised in point (3). The weapon was admissible because, while it was partial evidence of the commission of another crime, the weapon also tended to establish motive, intent, absence of mistake, or accident, identity of the appellant, and a common scheme or plan. *Barnett; Williams; Peterson;* and *Foster,* supra. Demonstrative evidence is admissible if it provides relevant information upon a material issue and the admission of it is within the discretion of the trial court. *State v. Murphy* 592 S.W.2d 727 (Mo. banc 1979). The weapon challenged herein was relevant to establish motive, intent, absence of mistake or accident, the identity of appellant, and a common scheme or plan. The court did not abuse its discretion in admitting the weapon into evidence. There is no merit to appellant's point (3) and it is ruled against appellant.

Judgment affirmed.