**STATE of Missouri, Respondent,**

v.

**Marvin D. ANTHONY, Appellant.**

**No. WD 47011.**

Missouri Court of Appeals,
Western District.

July 20, 1993.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, C.J., P.J., and BERREY and ULRICH, JJ.

ULRICH, Judge.

Marvin D. Anthony appeals from the judgment of conviction for the sale of a controlled substance in violation of section 195.211, RSMo Supp.1992. Mr. Anthony waived his right to trial by jury, and the case was tried to the court. Mr. Anthony was found to be a prior and persistent drug offender, §§ 195.275 and 195.291, RSMo Supp.1992, but was sentenced to ten years imprisonment as a prior and persistent offender, §§ 558.016 and 558.019, RSMo Supp.1992. Mr. Anthony contends on appeal that (1) the State failed to establish a chain of custody sufficient to reasonably assure that the purported controlled substance distributed by him was substantially in the same condition when it was analyzed by a forensic chemist that it was in when first obtained; and (2) sections 195.275 and 195.291 are unconstitutional and violate his equal protection rights because the statutes permit enhanced punishment without requiring a finding that he committed two or more felonies at different times or that he served not less than 120 days in the Department of Corrections. Mr. Anthony also claims that (3) he was denied due process rights in that the purchasing undercover officer's pretrial and in-court identifications of Mr. Anthony were erroneously accepted into evidence because the pretrial identification procedures were impermissibly suggestive and the in-court identification was unreliable as a matter of law and void of any independent basis; and (4) the court erroneously permitted the prosecuting attorney to cross-examine Mr. An-

thony regarding his failure to explain to police authorities where he was on the day of the alleged offense, thereby constituting an impermissible comment upon his postarrest silence. Because points (1), (2), and (4) were not preserved, Mr. Anthony seeks plain error review of the issues presented in those points. The conviction is affirmed, but the case is remanded with directions that the trial court correct the sentence imposed in the judgment of conviction as specified *infra.*

On June 20, 1991, an undercover Kansas City, Missouri, police officer went to a residence in Kansas City in response to anonymous complaints that narcotics were being sold at the residence. An informant accompanied the officer. The officer and the informant arrived at the residence at approximately 8:36 p.m., when it "was still light outside," and found a man later identified as Mr. Anthony on the front porch of the residence.

The undercover officer, the informant, and Mr. Anthony entered the residence through the front door and proceeded to a coffee table. The officer told Mr. Anthony that he wanted to buy twenty dollars' worth of crack cocaine. Mr. Anthony reached under the coffee table, brought out a wicker bowl, and placed it on top of the coffee table. Inside the bowl were small white objects that appeared to the officer to be crack cocaine "rocks." The undercover officer reached into his left pocket and removed a twenty-dollar bill and a small white rock of crack cocaine.[1] Mr. Anthony saw the crack cocaine the undercover officer had removed from his pocket and made a comment. The undercover officer took one of the rocks from the bowl and handed Mr. Anthony the twenty-dollar bill. The undercover officer then placed the rock he purchased from Mr. Anthony in a pocket other than the one in which he had placed the cocaine that he had acquired during the prior, unrelated purchase. The undercover officer and the informant left the resi-

dence. The officer proceeded to his vehicle and drove away from the residence.

After arriving at the police station, the undercover officer field-tested the substance purchased from Mr. Anthony to determine whether it was cocaine. The field test was positive for the presence of cocaine.

On June 26, 1991, the undercover officer, accompanied by another police officer, drove by the residence during daylight hours. The undercover officer drove by the residence intending to purchase more cocaine and to prepare the other officer to execute a search warrant for the residence in the future. (The drive-by was standard operating procedure in anticipation of executing a search warrant to help insure that the correct residence would be searched since the undercover officer would not normally accompany the searching officers.) As the two officers drove by the residence, the undercover officer observed Mr. Anthony sitting outside the residence near the sidewalk and "quite a few people all around" the house and road. Fearing that someone milling about the residence may have seen him with another police officer, the undercover officer did not attempt to purchase additional cocaine from Mr. Anthony.

Later that same day, the residence in which the undercover officer purchased crack cocaine from Mr. Anthony was searched by police officers. Mr. Anthony was present in the residence when the officers searched it. He was detained and subsequently arrested.

On June 27, 1991, the undercover police officer viewed a photographic display. Another officer prepared and presented the display to the undercover officer. From the photographs, the undercover officer identified Mr. Anthony as an individual who sold him crack cocaine on June 20, 1991. The undercover officer placed his initials and the date on the back of the photograph he identified.

---

1. The undercover police officer had made a purchase of crack cocaine at another location prior to arriving at the residence where he encountered Mr. Anthony. The officer testified that he had placed the crack cocaine that he purchased before the incident involving Mr. Anthony in his left pocket where the twenty dollar bill that he removed was located.

The photographic display viewed by the undercover officer was composed of four photographs. Each photograph was of a different male, and each male displayed had facial hair. The photograph of Mr. Anthony was taken closer to his face than were the photographs of the other three individuals in the photo display. Of the four men photographed, Mr. Anthony was the only man who appeared to be perspiring and the only man with a gray sheen about his hair; the other three men had totally black hair. The undercover officer testified that he had seen Mr. Anthony on two occasions before identifying his photograph in the photo display, and that, to the best of his memory, he had never seen the other three men in the photo display before.

The substance purchased by the undercover officer from Mr. Anthony was later analyzed by a forensic chemist who testified at trial. When the substance was received by the chemist, the substance had been sealed in a plastic bag by the undercover officer who had purchased the substance from Mr. Anthony. The undercover officer had placed the rock in the plastic bag, had initialed the package, and had placed a seal over his initials. The forensic chemist opened the sealed package and tested the rock substance purchased from Mr. Anthony. He conducted a series of tests to determine the contents of the rock substance. The tests reflected that the .1 grams of substance contained cocaine base. The chemist then placed the substance in a plastic envelope and sealed it.

Commencing on June 8, 1992, a jury-waived trial was held, during which Mr. Anthony testified. The substance identified by the forensic chemist was admitted as evidence. The court adjudged Mr. Anthony to be guilty of the sale of a controlled substance and found that Mr. Anthony was a prior and persistent drug offender, §§ 195.275 and 195.291, RSMo Supp.1992. In a subsequently issued written judgment, the trial court sentenced Mr. Anthony to ten years imprisonment as a prior and persistent offender, §§ 558.016 and 558.019, RSMo Supp.1992. Mr. Antho-ny appealed from the judgment of conviction.

## I

As point one on appeal, Mr. Anthony claims that the court plainly erred in admitting State's Exhibit Number 2, the evidence bag containing the substance the undercover police officer allegedly purchased from him. He claims that the prosecution failed to established a proper chain of custody to assure the trial court as the finder of fact that the substance purchased from Mr. Anthony was in substantially the same condition when it was tested that it was in when purchased. Specifically, Mr. Anthony claims that the undercover officer's testimony regarding how he initially possessed the controlled substance was contradictory and confusing and that the state presented no testimony regarding the custody of the controlled substance between the time it was allegedly purchased and the time it was tested by the forensic chemist. Because Mr. Anthony did not object when State's Exhibit Number 2 was admitted into evidence, the issue was not preserved. He now requests that this court review the admission of the evidence for plain error. Rule 29.12(b).

Plain error is evident, obvious, and clear error. *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992). Plain error is error so substantial that without correction, manifest injustice or miscarriage of justice will result. *State v. Johnson*, 829 S.W.2d 630, 633 (Mo.App.1992).

The admission of demonstrative evidence is within the sound discretion of the trial court. *State v. Huff*, 789 S.W.2d 71, 78 (Mo.App.1990). In order for the trial court to receive testimony showing the results of tests performed on articles, the court must be satisfied not only as to the identity of the articles, but also that the articles were in the same condition when tested as when originally obtained. *State v. Gustin*, 826 S.W.2d 409, 415 (Mo.App. 1992). The evidence presented must provide a reasonable assurance that the exhibit offered is the same and in like condition as when received and that it has not been

tampered with or contaminated. *State v. Camden*, 837 S.W.2d 520, 523 (Mo.App. 1992); *Huff*, 789 S.W.2d at 78. This "reasonable assurance" standard does not require proof of hand-to-hand custody, *State v. Dreiling*, 830 S.W.2d 521, 527 (Mo.App. 1992); *Gustin*, 826 S.W.2d at 415; *Huff*, 789 S.W.2d at 78, or a showing that the exhibit was "continually watched," *State v. Reed*, 789 S.W.2d 140, 143 (Mo.App.1990), or proof of the exclusion of every possibility that the evidence has been disturbed. *Dreiling*, 830 S.W.2d at 527; *Gustin*, 826 S.W.2d at 415; *Huff*, 789 S.W.2d at 78. Indeed, the trial court may assume, absent a showing of bad faith, ill will or proof, that the officials charged with custody of the evidence properly discharged their duties and did not tamper with the evidence. *State v. Taylor*, 804 S.W.2d 59, 61 (Mo.App.1991); *Huff*, 789 S.W.2d at 78.

In this case, the undercover officer testified that he put the cocaine from the previous, unrelated sale "in my pocket where my [Street Narcotics Unit buy] money was." The officer first stated that his money "would probably be in my right pocket." However, in describing where he put the cocaine allegedly purchased from Mr. Anthony, the officer stated, "I kept the first one in my left pocket, the next one I put into the other pocket." When questioned by the court as to how he kept the rocks of cocaine from the two purchases separate, the officer testified that he put the cocaine obtained from Mr. Anthony in his shirt pocket.[2]

After leaving the residence where he encountered Mr. Anthony, the officer testified that he returned to the police station and field-tested the substance Mr. Anthony sold him. The substance tested positive for the presence of cocaine. The officer then placed the substance in a plastic bag, initialed it, sealed it, and put a seal over his initials.

At trial, the officer identified State's Exhibit Number 2 as the crack cocaine he purchased from Mr. Anthony on June 20, 1991. He stated that he knew State's Exhibit Number 2 was the same crack cocaine purchased that night from Mr. Anthony because the exhibit had his initials, his serial number, the date, and the case report number on it.

The forensic chemist testified that he first saw State's Exhibit Number 2 on July 22, 1991. He stated that when he received the package containing the exhibit from the evidence vault at the crime lab the package was "in a sealed condition." He performed a series of tests on the substance and determined that it contained cocaine base. He testified that he could identify State's Exhibit Number 2 by his seal which he placed on the bottom of the heat-sealed envelope following his analysis.

The evidence in this case was sufficient to provide the trial court with a reasonable assurance that State's Exhibit Number 2 was the same and in like condition when tested by the forensic chemist as when purchased by the undercover officer and that it had not been tampered with or contaminated in the interim. *Gustin*, 826 S.W.2d at 415; *Huff*, 789 S.W.2d at 78. The undercover officer clarified the method he used to keep the substances from the two purchases separate and indicated that he placed the substance purchased from Mr. Anthony in a sealed package. Although the evidence did not indicate directly who had constant custody of the exhibit between the time the undercover officer sealed the exhibit and the time the forensic chemist tested it, the State was not required to prove the exhibit was continually watched. *Reed*, 789 S.W.2d at 143. It was enough that the officer testified that he sealed the exhibit and the chemist indicated he received the exhibit still in a sealed condition, for nothing in the record suggested that the package had been opened

---

**2.** The officer specifically stated:

I put the first narcotic purchase in my left pocket which is where it was at when I pulled it out in the house. After I pulled out the 20, the rock was still there. I put it back into my pocket. The second one, the T-shirt I normally wore when I worked undercover, I wore the same one. It's a greasy old blue shirt, had big shirt pockets on it and I would just put the,—whenever I would do it, I'd put it right in my shirt pocket there.

and then resealed at any point during the time the exhibit left the officer's custody until it was received by the chemist, and in the absence of evidence to the contrary, the trial court may assume that the officials who had custody of the exhibit properly discharged their duties. *Taylor*, 804 S.W.2d at 61; *Huff*, 789 S.W.2d at 78.

Mr. Anthony's reliance on *State v. Weber*, 768 S.W.2d 645 (Mo.App.1989), is misplaced. As the southern district of this court noted in *Gustin*, 826 S.W.2d at 417:

[In *Weber*], 34 items were seized in a residence. The record was vague as to which officers found which items and who tagged the items. One officer testified he turned the items over to a police chief. The chief denied this. Another officer testified he received some of the items from the chief. There was no showing of where the exhibits were for one seven-day interval. Furthermore, the evidence failed to show that articles tested by a chemist were in substantially the same condition when tested as when seized.

(citations omitted). The facts of *Weber* render it inapposite to this case. The trial court did not err in admitting State's Exhibit Number 2, and, therefore, Mr. Anthony has failed to establish plain error. Point one is denied.

## II.

■ Mr. Anthony contends as point two on appeal that the trial court plainly erred in sentencing him as a prior and persistent drug offender under sections 195.275 and 195.291, RSMo Supp.1992. He claims that sections 195.275 and 195.291 are unconstitutional and violate his equal protection rights because the statutes permit enhanced punishment as a prior or persistent drug offender without requiring certain findings that must be made in order to be sentenced as a prior or a persistent offender under the general recidivist statutes, sections 558.016 and 558.019, RSMo Supp. 1992. Specifically, Mr. Anthony notes that sections 195.275 and 195.291 permit him to receive an extended sentence as a prior and persistent drug offender without a finding that he committed two or more felonies at

different times, as required under section 558.016.3, or that he served not less than 120 days in the Department of Corrections, as detailed in section 558.019.2.

As Mr. Anthony acknowledges, his constitutional challenge to sections 195.275 and 195.291 was not presented in the trial court and comes for the first time on appeal. Because this challenge was not timely raised and therefore not preserved for appellate review, this court can neither consider the issue nor transfer the case to the Missouri Supreme Court. *State v. Belcher*, 805 S.W.2d 245, 251 (Mo.App.1991). Point two is denied.

## III.

■ Mr. Anthony argues as his third point on appeal that the trial court erred in overruling his motion to suppress the undercover officer's pretrial and in-court identifications of him as the seller of a controlled substance and his objection to the officer's testimony regarding the identifications. Mr. Anthony contends that the pretrial identification procedures were impermissibly suggestive and that the ensuing in-court identification was unreliable as a matter of law and void of any independent basis.

In order to prevail in his challenge to the identification testimony of the undercover officer, Mr. Anthony must establish (1) that the investigative procedures used by the police were impermissibly suggestive, and then (2) that the suggestive procedures made the identification at trial unreliable. *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990). Although reliability is the "linchpin" in determining the admissibility of identification testimony, Mr. Anthony must "clear the suggestiveness hurdle" before securing a reliability review. *Id.*

Mr. Anthony claims that the identification testimony of the undercover officer was the product of an unnecessarily suggestive photographic lineup. He contends that the officer's pretrial identification of him violated his due process rights because his photograph was the only photograph in the array that was a close-up, he was the

only individual in the array who was "sweating profusely," and he was the only individual in the array who had gray hair.

 Missouri courts have repeatedly held that mere differences in size, color, background, or type of photographs do not render a photographic display impermissively suggestive. *State v. Simms*, 810 S.W.2d 577, 582 (Mo.App.1991); *State v. Cox*, 740 S.W.2d 275, 277 (Mo.App.1987); *State v. Reasonover*, 700 S.W.2d 178, 182 (Mo.App.1985); *State v. Trimble*, 654 S.W.2d 245, 256 (Mo.App.1983); *State v. Davis*, 645 S.W.2d 6, 6–7 (Mo.App.1982); *State v. Heffner*, 641 S.W.2d 803, 806 (Mo. App.1982); *State v. Gullett*, 633 S.W.2d 454, 456 (Mo.App.1982). Likewise, a lineup is not impermissibly suggestive merely because the individuals comprising it have dissimilar physical appearances. *State v. Roberts*, 838 S.W.2d 126, 133 (Mo.App. 1992). Because a reasonable effort to find physically similar participants is all that is normally required, differences in age, weight, height, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness. *Id.*

The photographs in the lineup each measure 2¹⁄₁₄ inches by 1¹¹⁄₁₆ inches. They show four men with relatively short black hair, all four reasonably close in age and size and all four having similar facial hair. Two of the photographs, labeled one and two in the array, were taken at about the same distance, giving the viewer a full picture of the heads and a partial view of the top of the shoulders of the men. One picture, photograph three, was shot from a farther distance away so that the man's head and upper chest are visible. Mr. Anthony's picture, photograph four, appears to have been taken somewhat closer to the head than photographs one and two were.

Although the photograph of Mr. Anthony was of a different "type" than the others in that it was taken at a slightly closer distance than the others, this difference is minor and did not suggest that Mr. Anthony was the suspect. *See Reasonover*, 700 S.W.2d at 182; *Trimble*, 654 S.W.2d at 256; *Davis*, 645 S.W.2d at 6–7; *Heffner*, 641 S.W.2d at 806; *Gullett*, 633 S.W.2d at 456

(differences in type or size of lineup photographs do not render the lineup impermissibly suggestive). Similarly, the fact that Mr. Anthony was the only man in the lineup who was visibly perspiring and who had a gray sheen about his hair was not suggestive, for mere physical dissimilarities do not indicate impermissible suggestiveness. *Roberts*, 838 S.W.2d at 133. Furthermore, there is no indication that the man who sold cocaine to the undercover officer was perspiring, and the officer described the suspect as having "short cropped black hair" rather than graying hair.

Because Mr. Anthony has not established that any of the differences that he claims exist between his picture and the others in the lineup made the lineup impermissibly suggestive, there is no need for this court to review the reliability of the undercover officer's in-court identification of Mr. Anthony. *Vinson*, 800 S.W.2d at 446. Point three is denied.

### IV.

 As his fourth and final point on appeal, Mr. Anthony contends that the trial court plainly erred in permitting the prosecuting attorney to cross-examine Mr. Anthony regarding his failure to explain to police authorities where he was on the day of the alleged offense. Mr. Anthony refers specifically to the following exchange:

ASSISTANT PROSECUTOR: Now, you testified that you just got out of the hospital a few days before and that's how you remembered June 20th, 1991, is that right?

MR. ANTHONY: Yes.

ASSISTANT PROSECUTOR: You were interrogated by Detective Thurman on June 27th, of 1991, is that correct?

MR. ANTHONY: Yes.

ASSISTANT PROSECUTOR: You never mentioned once your whereabouts on June 20th?

MR. ANTHONY: He never asked me where I was.

Mr. Anthony argues that the prosecuting attorney's line of questioning constituted an impermissible comment upon his postar-

rest silence in violation of the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 19 of the Missouri Constitution. Because Mr. Anthony's trial counsel did not timely object to this questioning, Mr. Anthony now seeks plain error review. Rule 29.12(b).

The State is prohibited from using an accused's silence, at the time of arrest and after receiving *Miranda* warnings, for impeachment purposes. *State v. Robinson,* 834 S.W.2d 246, 248 (Mo.App. 1992) (citing *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976)). However, this rule against the admissibility of an accused's postarrest, post-*Miranda* silence does not apply if the accused chooses not to exercise his or her right to remain silent and elects, instead, to make a statement while in custody. *State v. Pulis,* 822 S.W.2d 541, 546 (Mo.App. 1992); *State v. Hudson,* 793 S.W.2d 872, 882 (Mo.App.1990); *State v. Smart,* 756 S.W.2d 578, 580 (Mo.App.1988). "Once an accused agrees to answer questions, his failure to answer certain inquiries is a fair subject for comment at trial." *Pulis,* 822 S.W.2d at 546. An accused's waiver of the right to remain silent is not irrevocable, but the accused has the burden of showing reinvocation of the right after a waiver. *Smart,* 756 S.W.2d at 584 (Nugent, P.J., concurring).

Mr. Anthony admitted during cross-examination that he had been interrogated by a police detective on June 27, 1991, one day after his arrest and one week after the crime he was charged with took place. Although the entirety of the interrogation was not introduced into evidence, Mr. Anthony acknowledged making several statements to the detective. He admitted telling the detective on June 27, 1991, that he had last smoked crack cocaine on June 26, 1991, and that he had purchased this cocaine "on the street." He also indicated that he had informed the detective during the interrogation that he had only known the man who Mr. Anthony claimed lived at the house where the drug purchase in question took place for two weeks.

Mr. Anthony does not contend that he had not been advised of his *Miranda* rights before the interrogation, and nothing in the record indicates that his apparent willingness to answer the detective's questions was anything other than a waiver of his right against self-incrimination. Indeed, Mr. Anthony's own testimony reflects that his reason for not mentioning his whereabouts to the detective had nothing to do with the exercise of his Fifth Amendment rights. He did not tell the detective where he was on June 20, 1991, because the detective did not ask him.

Because there is no evidence in the record that Mr. Anthony exercised or reinvoked his *Miranda* rights during the June 27, 1991, interrogation, the prosecuting attorney's question during cross-examination regarding Mr. Anthony's failure to explain his whereabouts during the interrogation was not an impermissible comment upon his postarrest silence. Thus, the trial court having committed no error, Mr. Anthony has failed to demonstrate plain error, error so substantial that without correction, manifest injustice or miscarriage of justice will result. *Johnson,* 829 S.W.2d at 633. Point four is denied.

The State directs this court's attention to a discrepancy that exists between the trial court's findings and its written judgment. The State's evidence established that Mr. Anthony had pleaded guilty to the felonies of sale of a controlled substance and possession of a controlled substance on February 2, 1990. The trial court correctly found that Mr. Anthony was "a prior drug offender under Sections 195.275 and 195.291.1 and a persistent drug offender punishable under Sections 195.275 and 195.291.2." The trial court's subsequent written judgment, however, states that Mr. Anthony was found to be a prior and persistent offender pursuant to the provisions of sections 558.016 and 558.019 and sentenced him under those statutes to ten years imprisonment, omitting the fact that Mr. Anthony was found to be a "prior drug offender" and a "persistent drug offender" in accordance with sections 195.275 and 195.291. While Mr. Anthony is a prior

offender under section 558.016.2 because he previously pleaded guilty to two felonies,[3] he does not qualify for persistent offender status under section 558.016.3 since his two prior felonies were not committed at different times. These errors may be corrected *nunc pro tunc. Burgin v. State,* 847 S.W.2d 836, 839 (Mo.App. 1992); *State v. Harris,* 817 S.W.2d 523, 525 (Mo.App.1991).

Mr. Anthony's conviction for the sale of a controlled substance in violation of section 195.211 is affirmed, but the case is remanded with directions that the trial court enter an order *nunc pro tunc* correcting the written judgment of conviction to remove all references to Mr. Anthony's status as a persistent offender under sections 558.016 and 558.019 and adding that Mr. Anthony was found to be a prior and persistent drug offender pursuant to sections 195.275 and 195.291.

All concur.

3. Although Mr. Anthony has been found to be a prior offender under section 558.016.2, he can *not be sentenced under section* 558.019.2(1) as a prior offender, because no evidence was introduced at trial that he had served a term of imprisonment of not less than one hundred twenty days in the department of corrections. § 558.019.2.