Mark McCOLLUM, Movant,

v.

STATE of Missouri, Respondent.

No. 12867.

Missouri Court of Appeals,
Southern District,
Division Three.

May 5, 1983.

Motion for Rehearing and to Transfer to
Supreme Court Denied
May 17, 1983.

Application to Transfer Denied
June 30, 1983.

David E. Woods, Regional Public Defender, Poplar Bluff, for movant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

■ In April, 1979, in the Circuit Court of Stoddard County, movant was convicted of escape by means of a dangerous instrument. He was sentenced to imprisonment for 20 years. His conviction was affirmed in *State v. McCollum,* 598 S.W.2d 198 (Mo. App.1980). By this appeal, he presents two points asserting the trial court erred in denying his attack upon that conviction by

motion under Rule 27.26. The state argues the evidence does not establish a basis for the relief sought. It is axiomatic the burden of the movant was to prove his case by the preponderance of the evidence. *State v. Bradley,* 618 S.W.2d 206 (Mo.App.1981).

A very brief, factual statement is sufficient for initial consideration of those two points. On January 12, 1979, movant, Dale Abel, Carol Foust and Ronita Haws escaped from the Stoddard County jail. Ronita Haws was a juvenile. The movant denied he was involved in a conspiracy to escape or that he had any prior knowledge of a planned escape. The testimony of Ronita Haws, with other evidence, refuted this denial.

■ The movant's first point is based upon the state's alleged nondisclosure of a "deal" for the testimony of Haws. He claims that the trial court erroneously denied this point upon a finding the prosecutor made no such deal. He states this is error "because the important consideration is not whether a promise or agreement has been made or whether it is carried out, but whether the witness believes or has reason to believe that if she testifies in a particular matter, she will receive more favorable treatment." The latter part of this point is a statement taken out of context from *State v. Brooks,* 513 S.W.2d 168 (Mo.App. 1973). The movant relies upon that case. In *Brooks* it was clear the prosecutor had offered "a deal" to a co-defendant whose testimony incriminated Brooks. The statement referred to was directed to the state's contention that the parties had not actually agreed upon a deal. This court construes this statement to have meaning only when such a belief is reasonably based upon conduct of the prosecutor. It does not apply to a witness' independent anticipation of the possibility of some recognition of his willingness to testify.

■ The real thrust of movant's first point can be derived only from his argument. First, he contends the evidence did show a deal for Haws' testimony was made by the prosecutor or by the juvenile officer. Then, he argues the prosecutor deprived the

movant of a fair trial because the prosecutor did not disclose this deal or Haws' belief concerning a deal. This point will be considered as written without intimating a result if the evidence established the juvenile officer, unknown to the prosecutor, made a deal with the witness.

The point is based upon the following evidence. First to be considered is a letter written by Haws to David Frazier who was in the Missouri Penitentiary. In that letter she said: "By the way guess what! I am going to testify for the State in the trial, and then they are going to turn me loose to go back to No. Dak." The letter then recited the preliminary hearing was to be Monday at 9:30 a.m. The letter was mailed in an envelope postmarked February 20, 1979. There is no intimation that any of the authorities had any knowledge of this letter prior to the time movant's motion under Rule 27.26 was filed. The point is also based upon a letter written by Haws to the juvenile officer in which, among other things, she said: "I am sorry, but I can't both testify, and have charges pressed against me. I realize it is a slim chance of someone hurting me, but even so *the chance is still there.*" The date of this letter is not clear. The prosecutor had received a copy of Haw's written statement dated February 2, 1979. It was his recollection the juvenile officer brought this letter to his office sometime after he had received the written statement. A petition alleging Haws was a juvenile delinquent was filed in the juvenile court. On February 15, 1979, counsel was appointed for her. The defendant's preliminary hearing, at which Haws testified, was held February 20, 1979. Sometime after the defendant's trial, Haws was released to live with her mother in a distant state.

Movant insists this evidence compels the conclusion Haws testified because the prosecutor or the juvenile officer had promised her favorable treatment if she testified. Even standing alone, that evidence does not compel such a conclusion. Individuals do decide to testify for other reasons. In the letter first referred to Haws also said: "I've had bad dreams of Carol, Dale & Mark coming after me. Why do I feel so damn guilty for something that happened. I tried to stop it Davey I really did! But I was so scared of trying. that I didn't try hard enough. God, why did I have to be so chicken. I hate myself for it!!! I really am going to try to be a different person, and I have learned a great deal from this I really have!" In the letter to the juvenile officer, in addition to the statement quoted above, Haws also said: "Carol has already threatened me and I cannot take anymore!!!!!" The letters readily provide an inference Haws, upon her own initiative, decided to testify but wavered in the face of threats and fear. This inference is strengthened by the fact that from the time of her arrest Haws talked freely to the authorities. Further, it is reasonable to infer the letter to the juvenile officer reached the prosecutor before the preliminary hearing at which Haws testified. The defendant did not prove otherwise. The prosecutor's complete file was disclosed to movant's counsel. Even assuming that letter provides an inference of a deal by the juvenile officer, the prosecutor was not required, in addition to disclosing the letter as the movant argues, to interpret the implications of that letter for movant's counsel.

Finally, movant's contention is thoroughly rebuffed by other evidence in the case. The prosecutor unequivocally stated he made no threats or promises to Haws or to her attorney or to the juvenile officer to induce Haws to testify. The attorney appointed for Haws did advise her to tell the truth. He anticipated this would be taken into consideration by the juvenile authorities. He discussed the facts of the escape with Haws. Haws' testimony at the defendant's preliminary hearing and trial was consistent with her previous statement. Haws' attorney unequivocally stated that no threat against or promise of favorable treatment for Haws in exchange for her testimony was made to him by either the prosecutor or the juvenile officer. To counter, movant argues such an agreement could have been made in the attorney's absence when the juvenile officer and Haws were driving to the defendant's preliminary

hearing. The lack of foundation for this argument and the defendant's first point is established by the defendant's extensive cross-examination of Haws at the preliminary hearing. She then repeatedly denied the existence of any plea bargain. The movant did not meet his burden to prove any conduct by the authorities which could be reasonably construed as an offer of favorable treatment for Haws' testimony. His first point is denied.

■ The movant's second point is that his attorney was ineffective in three respects. His first complaint is that the attorney failed to challenge the jury panel because of the automatic exclusion of women. No evidence was presented that women were excluded from jury panels in Stoddard County. This charge merits no consideration. *Pride v. State,* 615 S.W.2d 445 (Mo.App. 1981); *Adail v. State,* 612 S.W.2d 6 (Mo. App.1980). He then asserts ineffectiveness because his attorney did not discuss with him the advantages of a pre-sentence investigation report before he waived such an investigation. From prior experience, movant was familiar with such investigations and reports. Before sentencing, the trial court asked, "Do you understand that a pre-sentence can in some cases be beneficial to a defendant, and in other cases it can be harmful, do you understand that?" The movant answered, "Yes, I understand there has been one already taken in a previous case in Cape Girardeau, and why it hasn't been here, I don't know, therefore I wish to waive this one."

■ Movant's final claim of ineffectiveness is his attorney's failure to call his co-escapees, Foust and Abel, as witnesses. Movant attempted to bolster this point by a deposition of inmate Butler taken in the Missouri Penitentiary. Butler said Abel told him that only Abel and Foust planned the escape. It must be noted from the previous opinion of this court that movant was waiting in his cell with his suitcase packed. Movant and his attorney did discuss the possibility of calling these witnesses. In a pretrial conference, the movant expressed to the trial court his satisfaction with his attorney's services. He did not intimate he wanted these witnesses called. His attorney knew these people and concluded they would not be helpful to the movant as witnesses. Such a decision is trial strategy and does not establish ineffectiveness. *Decker v. State,* 623 S.W.2d 563 (Mo.App.1981). The decision by movant's attorney was much like the decision in *Joiner v. State,* 621 S.W.2d 336 (Mo.App.1981). The movant's second point is denied and the judgment of the trial court is affirmed.

CROW, P.J., GREENE, C.J., and FLANIGAN and PREWITT, JJ., concur.