STATE of Missouri,
Respondent-Plaintiff,

v.

Michael D. TURNBOUGH,
Appellant-Defendant.

No. 51614.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 14, 1987.

Motion for Rehearing and/or Transfer
Denied May 12, 1987.

**38**

Kennard B. Woods, Chesterfield, for appellant-defendant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for respondent-plaintiff.

SNYDER, Chief Judge.

Michael B. Turnbough appeals from a judgment obtained in a court-tried case in which he was convicted of selling cocaine (Count I), and of attempting to sell cocaine (Count III), in violation of § 195.020 RSMo. 1986. Appellant was sentenced to five (5) years in the custody of the Missouri Department of Corrections and Human Resources on each conviction, the sentences to run concurrently. The judgment is affirmed.

Appellant relies on four allegations of error, the most important being the charge that the trial court erred in overruling appellant's objections to the receipt in evidence of certain state's exhibits, and to testimony identifying those exhibits as cocaine received from appellant. Appellant asserts that because the chain of custody was not sufficiently established, there was no assurance that the cocaine was obtained from defendant or that it had not been tampered with prior to analysis or trial.

Appellant also posits error in the overruling of his objections to certain trial testimony and in the denial of his motion for a judgment of acquittal.

Appellant was originally charged with three counts of the sale of cocaine. After the trial court granted a motion for a directed verdict on Count II after the state's opening statement, appellant was tried and convicted on Count I (Sale on February 22, 1985), and Count III (Attempted sale on May 15, 1985).

The sale charged in Count I occurred on February 22, 1985, when an undercover narcotics agent, Officer Stephen Dougherty, met with a third party, Ron Meshell, for the purpose of consummating a prearranged purchase of one half ounce of cocaine.

Meshell and Officer Dougherty met appellant at a house in St. Louis County where appellant placed a baggie containing a paper bindle on a dresser top. Dougherty took the baggie, gave money to Meshell who in turn gave the money to appellant, after which Dougherty left the house.

The various persons, times, and places involved in the chain of custody will be given in detail when appellant's allegation of error relating to the chain of custody is considered. For the benefit of the uninitiated, Webster's Third New International Dictionary of the English Language gives the slang definition of "bindle" as "a small package, envelope, or paper containing a narcotic (as morphine, heroine, or cocaine)"; also "a usu. small quantity of a narcotic, a narcotic dose."

Officer Dougherty initialed the baggie and then transferred its custody to Special Agent Walton of the Federal Drug Enforcement Administration (DEA). Agent Walton heat-sealed the evidence in a plastic evidence pouch and mailed it to the DEA laboratory in Chicago for analysis by DEA chemist, Jack K. Raney.

On April 29, 1985, prior to the transaction charged in Count III, Officer Dougherty met with a third party by the name of Bob Jacobs. Officer Dougherty testified over hearsay and relevancy objections that Jacobs arranged for Dougherty to meet with appellant on that date in order to purchase cocaine from appellant.

Officer Dougherty further testified over hearsay and relevancy objections that at the April 29 meeting he had asked appellant if he had "the coke" and appellant replied "yes" and pointed to "two folds" on a coffee table. Dougherty then gave appellant money in exchange for the "folds" or "bindles" of cocaine and departed.

This transaction of April 29, 1985 formed the basis for Count II of the present action. Appellant's motion for a directed verdict on this count was granted after the prosecution's opening statement because the information on Count II pleaded an offense on May 29, rather than April 29, the date mentioned by the prosecutor for Count II in the opening statement. Nonetheless, the trial court allowed this testimony concerning the actions and statements of appellant and Jacobs pertaining to the purported transaction on April 29.

The attempted sale for which appellant was convicted in Count III occurred on May 15, 1985. Officer Dougherty met with appellant in a parking lot in St. Louis County on that date. Appellant inquired as to whether Officer Dougherty had the money. Officer Dougherty responded in the affirmative and began to count the money. At this point appellant reached into the crotch area of his pants, removed a plastic baggie containing a white powder substance and handed it to Officer Dougherty. No money changed hands.

Further conversation ensued between appellant and Officer Dougherty concerning a deal for the sale of additional quantities of cocaine.

Special Agent Walton and others then placed appellant under arrest. Officer Dougherty initialed the baggie containing the white powder substance and transferred its custody to Agent Walton. Agent Walton later sealed this evidence in a plastic evidence pouch and mailed it to the DEA laboratory in Chicago for analysis.

In appellant's first point he contends the trial court erred in overruling his objections to the receipt in evidence of state's exhibits 1 through 5, 8, 9, 12, and 13, and to the testimony identifying the exhibits as cocaine received from appellant. The point is not well taken.

Appellant asserts that purported defects in the chain of custody deprived the court of any assurance that the cocaine was in fact obtained from appellant, or that it had not been tampered with prior to analysis or trial.

Although the state's evidence establishing the chain of custody for the exhibits is not as detailed as appellant believes necessary, it is sufficient to support the court's judgment.

The trial court has the discretion to determine whether a chain of custody which will allow the admission of physical evidence has been sufficiently established. *State v. Shelli*, 675 S.W.2d 79, 81 (Mo.App. 1984). In order to rule that admission is proper, the court must find that the facts provide "reasonable assurance" that the exhibits sought to be introduced were in fact received from the defendant and are in like condition at the time of introduction as

when received. *State v. Baines,* 394 S.W.2d 312, 316 (Mo.1965); *State v. Pernell,* 606 S.W.2d 389, 392 (Mo.App.1979). It is not necessary for the state to rule out every possibility of disturbed possession. *State v. Shelli,* 675 S.W.2d at 82.

■ Appellant complains that the state's evidence accounting for the whereabouts of the exhibits in question is deficient for the period in which the exhibits were in the custody of the DEA in St. Louis, in the U.S. Mail, at the DEA laboratory in Chicago, and during the time between analysis and trial.

Appellant cites numerous cases in support of the proposition that the state is required to establish the identity, employment and responsibilities of each person who has handled a controlled substance before testimony concerning its analysis may be admitted: *State v. McCrary,* 478 S.W.2d 349 (Mo.1972); *State v. Robinson,* 447 S.W.2d 71 (Mo.1969); *State v. Baines,* 394 S.W.2d 312 (Mo.1965); *State v. Pernell,* 606 S.W.2d 389 (Mo.App.1979); *State v. Collins,* 601 S.W.2d 640 (Mo.App.1980); *Thompson v. State,* 582 S.W.2d 700 (Mo. App.1979); *State v. Webster,* 539 S.W.2d 15 (Mo.App.1976). It is appellant's contention that because the state has failed to comply with this alleged requirement, the exhibits in question and testimony concerning them were improperly admitted. The decisions which appellant cites, however, do not compel such proof.

The cases cited by appellant clearly articulate the standard which the trial court must apply in determining the sufficiency of a chain of custody for exhibits containing fungible narcotics. The court must be able to find that the evidence provides "reasonable assurance" that the exhibits were the same and in like condition when admitted as when received from defendant. *McCrary,* 478 S.W.2d at 351; *Baines,* 394 S.W.2d at 316; *Collins,* 601 S.W.2d at 641; *Pernell,* 606 S.W.2d at 392; *Thompson,* 582 S.W.2d at 702; *Webster,* 539 S.W.2d at 17.

It is of little consequence that the decisions which appellant cites contain more stringent accounts of the custody of exhibits than does the case under review. The mere fact that a highly detailed chain of custody is deemed sufficient does not compel the conclusion that such detail is required.

This court's sole concern is that the evidence in the case under review provides "reasonable assurance" that the exhibits in question were not altered or substituted prior to analysis or trial. The evidence provides such assurance.

Both the exhibits in Count I (plastic baggie containing a paper bindle filled with cocaine) and in Count III (plastic baggie containing cocaine) were marked for identification by Officer Stephen Dougherty after their receipt by him from defendant. In each case, Dougherty immediately transferred custody of the exhibits to Drug Enforcement Administration Agent Donald Walton.

On the day of each transaction, Agent Walton heat-sealed the exhibits in plastic evidence bags. He then deposited the bags into a limited access storage vault at the DEA office in St. Louis.

In each instance, after two to three days Walton re-heat-sealed the exhibits in permanent evidence bags and dated and signed the labels. Walton then mailed the exhibits via registered mail to the DEA office in Chicago. In both instances Walton received registered mail receipts which were offered as evidence that the exhibits arrived at the DEA office in Chicago.

The exhibits in both counts were retrieved from the main storage vault at the Chicago DEA office by DEA chemist Jack Raney. Raney opened the sealed bags, analyzed the exhibits, and identified the substances as cocaine. At all times during their analysis all of the exhibits were either in Raney's physical possession or in his personal lock box, to which he had sole access.

Raney heat-sealed each exhibit after analysis, initialed and dated the packages, and returned them to the main vault at the DEA office in Chicago. The exhibits pertaining to each count remained sealed until

opened the morning of trial by Agent Walton.

Storage of the exhibits in the evidence vault at the St. Louis DEA office, where access was limited to two custodians, did not deprive the trial court of the requisite assurances. *State v. McCrary*, 478 S.W.2d 349, 350 (locked room accessible to "lab personnel" sufficient) (Mo.1972). Similarly, the fact that the exhibits were mailed and that there is no testimony as to who received them in Chicago or who transported them back to St. Louis for trial is not fatal to their admissibility.

There was testimony by DEA chemist Raney that the bags appeared unopened when received by him for analysis in Chicago, and that he re-sealed them immediately after the testing. Agent Walton testified that the bags remained sealed from the time of testing until opened by him on the morning of the trial.

The continuous protection offered by the heat-sealing of the evidence bags throughout the purported "gaps" in the chain of custody, together with the balance of the chain as reflected in the record, is sufficient to provide the requisite assurance of the exhibits' integrity. The exhibits and testimony concerning them were therefore properly admitted by the trial court and the appellant's first point is denied.

Appellant claims in his second and third points that the trial court erred in overruling his objection to the testimony of Officer Dougherty about statements and actions of Dougherty, Bob Jacobs, and appellant regarding the purported cocaine transaction on April 29, 1985. The charge against appellant arising out of the April 29 incident had been dismissed after the prosecutor's opening statement.

Appellant argues that this testimony was irrelevant, inadmissible hearsay and that it was error for the court to admit it as evidence of appellant's state of mind on May 15, 1985, the date of the attempted sale charged in Count III.

The general rule is that proof of the commission of separate and distinct crimes is not admissible unless it has some legitimate tendency to establish that defendant is guilty of the crime for which he is on trial. *State v. Shaw*, 636 S.W.2d 667, 671–2 (Mo.banc 1982); *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo.banc 1954).

It is unnecessary, however, to decide whether there exists some legitimate purpose for the questioned testimony. The admission of improper evidence is not grounds for reversal in a court-tried case as it is presumed that the court will not be confused or misled by it. *State v. Lowe*, 674 S.W.2d 262, 265 (Mo.App.1984); *State v. Travis*, 625 S.W.2d 630, 631 (Mo.App. 1981).

Assuming, without deciding, that the trial court erred in admitting Officer Dougherty's testimony, the error would be harmless. There is no indication that the trial judge in fact relied on the alleged improper testimony and there is other competent evidence in the record which is sufficient to support the trial court's judgment. Accordingly, appellant's second and third points are denied.

In appellant's final point he charges that the trial court erred in denying defendant's motion for acquittal with respect to Counts I and III. The ruling on appellant's other points and the not inconsiderable uncontradicted evidence mandates a denial of this point.

The judgment is affirmed.

CARL R. GAERTNER, J., and SIMEONE, Senior Judge, concur.