STATE of Missouri,
Plaintiff–Respondent,

v.

Jeffrey B. WEBER,
Defendant–Appellant.

No. 15872.

Missouri Court of Appeals,
Southern District,
Division One.

April 5, 1989.

Motion for Rehearing or to Transfer to Supreme Court Denied April 18, 1989.

Application to Transfer Denied
May 16, 1989.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dan L. Birdsong, Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for defendant-appellant.

GREENE, Judge.

Defendant, Jeffrey B. Weber, was charged in a three-count information with the felonies of having under his control, in violation of § 195.020, the controlled substances of (1) more than 35 grams of marijuana, (2) cocaine, and (3) methamphetamine. He was jury-convicted of all three offenses and thereafter sentenced to a total of 13 years' imprisonment as punishment for the crimes.

On appeal, Weber contends that the trial court erred in admitting into evidence a number of exhibits including substances identified by a forensic chemist as marijuana, cocaine, and methamphetamine because such exhibits were (1) obtained as a result of an invalid search of Weber's home, and (2) inadmissible because no proper foundation was laid for the admission into evidence of the exhibits, since there was no proof that the exhibits admitted into evidence were in substantially the same condition when admitted into evidence as they were when seized. Weber also asserts the trial court erred in not quashing the entire jury panel when it was brought to the court's attention prior to trial that at least fourteen members of the jury panel had improperly been allowed to view seven rifles, shotguns, and pistols taken from Weber's home when the house was searched by police. We reverse and remand.

The relevant facts of the case are as follows. On September 23, 1986, the then prosecuting attorney of Crawford County, Missouri filed an application for a search warrant in the Crawford County Circuit Court. The application requested court authorization to search a house located at 609 School Street, Cuba, Missouri, which house was occupied by Jeff Weber. The application asserted that cocaine and other controlled substances were kept in the house by Weber in violation of law. The application was accompanied by two affidavits, both dated September 23, 1986. The first was by Robert Kent, Chief of Police of Cuba, Missouri, who stated he was familiar with Weber's house on School Street. Kent further stated that on September 20, 1986, he had had a conversation with an informant whom he believed to be reliable and who had given him reliable information in the past. Kent said the informant told him that he had seen another individual purchase cocaine from Weber at Weber's house on School Street and that the substance purchased was "good cocaine, about 80%." The other affidavit was executed by Tim Bailey, an officer with the Cuba Police Department. Bailey said an informant, not the one who had conversed with Kent, told him that about three weeks prior to his

conversation with Bailey he had seen cocaine in Weber's house, and that Weber had asked him if he wanted to " 'snort a line,' " which is a term used to mean the ingestion of cocaine through the nose. The affidavit also stated that individuals living in the vicinity of Weber's house told Bailey that numerous cars came to Weber's house, and that persons going into the house stayed only a short period of time and then left. Based on the affidavits, a circuit judge found probable cause and issued the warrant authorizing a search of Weber's house.

Later that day, Chief Kent, Officer Bailey, Deputy Sheriff Leon Stevens, and several other law enforcement officers went to Weber's home to serve the warrant and search the house. As they approached the house, a young woman who was standing in the doorway saw them and closed and locked the door. To gain entry, Chief Kent kicked the door open and the officers entered. The woman and Weber were taken into custody and a search was commenced. The search warrant was read to Weber, and a copy was given to him. Kent was in charge of the search, and assigned officers to search specific portions of the house. Stevens was assigned to take charge of any articles that were seized that might be considered relevant under authority granted by the warrant, and assumably to correctly identify and preserve those articles.

Thirty-four different types of articles were seized during the search by Stevens. From the record, it appears that some of the items were found by other members of the search team, but were actually seized by Stevens. The articles included plastic bags and a vial of materials the officers suspicioned were controlled substances, such as cocaine and marijuana, three pistols, three shotguns, a rifle, various articles suspected of being drug paraphernalia, over $5,000 in cash, $3,122 of which was hidden in false-bottomed oil can, and various other items. Although at time of trial each article bore an exhibit tag stating "State's Exhibit ——," with a number following the word exhibit, the record is vague as to who tagged the articles or when it was done. There is no clear evidence in the record as to what was done with the articles immediately after they were seized by Stevens. Stevens testified he turned them over to Chief Kent and Officer Bailey. Kent denied this, as well as denied tagging the items or transporting them to the Cuba police station. The crucial items seized were marked at time of trial as State's Exhibits 10, 15, 16 and 27. State's Exhibits 10 and 16 were plastic bags containing a green, plant material; State's Exhibit 15 was two plastic bags, one containing a white powder and the other an off-white powder, with State's Exhibit 27 being a plastic bag containing a brown vial of white powder.

At trial, Stevens identified the four exhibits referred to as items he had seized during the search on September 23, 1986, but was not asked whether those items were in substantially the same condition at time of trial as they were when he seized them. Officer Bailey testified that he received the four exhibits from Chief Kent on September 30, 1986, which was seven days after they had been initially seized by Stevens, and that he took them to the Highway Patrol Laboratory in Jefferson City so that the contents of the bags and vial could be analyzed. There is nothing in the record to indicate when Kent came into possession of the exhibits, or where they had been in the interim between September 23, 1986, when they were seized, and September 30, 1986, when they were taken to Jefferson City.

The contents of the exhibits were analyzed at the patrol laboratory by forensic chemist Afton Ware, who determined that the green leafy substance contained in the bags marked State's Exhibits 10 and 16 was marijuana, that the contents of the brown glass vial that was in the plastic envelope marked State's Exhibit 27 was cocaine, while the contents of the two plastic bags in the envelope marked State's Exhibit 15 were cocaine and methamphetamine mixed with ephedrine. Bailey later returned to the laboratory and retrieved the exhibits and took them back to the Cuba police station where they were placed in the evidence locker where they stayed

until time of trial. While Bailey testified that the four exhibits were substantially in the same condition at time of trial as they were when he received them from Chief Kent, he gave no insight into where the exhibits had been for the one week period between the time they had been seized by Stevens and the time Bailey received them from Chief Kent, and offered no testimony as to whether the contents of the envelopes, bags, and vial were in substantially the same condition when he took them to the laboratory as they were when they were seized a week earlier. When the four exhibits that formed the basis for the charges against Weber were offered into evidence by the prosecutor, defense counsel objected, stating, in addition to other grounds, that the state had not proved a proper chain of custody as there was a one week period that was unaccounted for, and there was no testimony that the exhibits offered in evidence were in substantially the same condition as they were when seized. The objection was overruled by the trial court and the exhibits were admitted in evidence.

■■■ It is necessary to satisfy the court that articles tested to determine if they are controlled substances were in the same condition when tested as they were in when seized. *State v. Scott*, 647 S.W.2d 601, 607 (Mo.App.1983). While the law does not require proof of every hand-to-hand transfer of evidence, the chain of custody must be sufficiently traced so that there is reasonable assurance that the item offered has not been substituted for the original item that was seized, or that the substance has not been contaminated or tampered with. *State v. Price*, 731 S.W.2d 287, 290 (Mo. App.1987). In many cases, the chain of custody problem has been handled by having the officer who collects the evidence designated as the identification officer and require that he seal, label, tag, and mark the evidentiary items in question and to make a report as to what procedures he followed and the date on which they were done so that he can later testify that the evidence had not been tampered with. Such a procedure may have been followed in this case, as there are cryptic references in the testimony of officers testifying at trial to "envelopes," "red tapes," "markers," "evidence seal," "blue seal," "blue evidence tape," and like terms that lead us to believe the law enforcement officers were attempting to preserve the evidence free from taint. Unfortunately, none of the witnesses were asked questions by the prosecutor at trial that would have brought this out. The prosecutor did not ask who put the markings on the exhibits, when they were put there, or whether the exhibits were in substantially the same condition when they were presented at trial as they were when seized.

The State's questioning of the key witnesses who were Kent, Bailey, and Stevens on the chain of custody issue can best be described as inept, and fell short of establishing the required standard that is necessary to show that evidence connecting a person with a crime has been gathered, preserved, and presented in such a way that the integrity of the process cannot be seriously questioned. Since there was no proof introduced at trial that the articles tested by the chemist were in substantially the same condition as they were when they were seized by Deputy Stevens, there was no proper foundation for the introduction of the exhibits into evidence, or, for that matter, for the testimony of the chemist identifying the contents of the bags, envelopes, and vial as controlled substances.

The court committed reversible error in admitting State's Exhibits 10, 15, 16 and 27 into evidence. Since it is reasonably possible that proper identification and evidence preservation policies were utilized by the police in the case, we believe that the State should be given the opportunity to prove that the evidence was in the same condition when tested as it was when seized. We regret that it is necessary to try the case again, as retrials take time and cost money, but we are here to insure the integrity of the judicial process, and not to act as an agency of the prosecution. Since the case must be retried, we feel that we should briefly comment on the other issues raised on appeal so that there can be no doubt as to our position on those issues if they are raised in this case again in the future.

There is no merit to the contention that the affidavits attached to the application for a search warrant did not constitute probable cause for the issuance of the warrant. When considered together, the two affidavits contain sufficient factual allegations to establish that on September 23, 1986 there was a fair probability that evidence of the crime of unlawful possession of cocaine, which is a controlled substance, would be found in a search of Weber's house. Since this is true, the "totality of the circumstances" test, as enunciated in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) was met. *See State v. Bible,* 750 S.W.2d 676, 680 (Mo.App.1988).

Weber's final point concerns the alleged display before fourteen members of the jury panel of the seven firearms seized during the raid on his house. Evidently law enforcement officers removed the firearms after the trial judge ruled that they were not admissible evidence in the drug case. However, at that stage, the damage could have already been done, as the jury members may very well have connected the guns to Weber, and surmised that their presence in Weber's home had something to do with a drug selling operation. As such, they would be evidence of a crime with which Weber was not charged. Since the case is to be retried, we trust that this mistake will not be repeated.

We also note, ex gratia, that the verdict forms returned by the jury are improper as they do not set the punishment, but merely refer to the statutory range of punishment on each charge, leaving it to the trial judge to pick and choose which punishment to assess.

The judgment and sentence of the trial court are reversed and the cause is remanded for a new trial.

HOLSTEIN, C.J., and CROW, P.J., concur.