**STATE of Missouri, Plaintiff–Respondent,**

v.

**Carl David JACKSON, Defendant–Appellant.**

No. 16329.

Missouri Court of Appeals, Southern District, Division One.

Aug. 24, 1990.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Mel L. Gilbert, Buffalo, for defendant-appellant.

MAUS, Judge.

Defendant Carl David Jackson was charged with selling marijuana to Mike Lowe, an undercover agent with the Department of Conservation, in violation of § 195.020 RSMo 1986. In a jury-waived case, the defendant was found guilty and sentenced to five years' imprisonment. Defendant raises three points on appeal.

In his first point, defendant contends there was insufficient evidence to support his conviction. The facts surrounding the sale were sharply disputed. The state's case-in-chief consisted of the testimony of

Mike Lowe and a chemist with the Missouri Highway Patrol. The testimony of agent Lowe was essentially as follows. As part of his ongoing undercover investigation into game violations in Hickory County, he had become acquainted with several individuals, including defendant, Danny Hash and Randy Gates. On November 10, 1986, Lowe went to defendant's house to buy two deer from Danny Hash. When Lowe arrived at defendant's house, defendant told him that Hash would be over shortly with the deer. Defendant asked Lowe if he wanted to go kill another deer. Lowe answered yes and the two men left in Lowe's truck.

While driving in Lowe's truck looking for deer, defendant asked Lowe if he wanted some marijuana. When Lowe asked how much marijuana defendant had, defendant directed Lowe to a field. Defendant said that he, Danny Hash and Randy Gates had planted that field with marijuana earlier that year. Defendant pulled several plants out of the ground and the two men left. After stopping at Hash's house, defendant and Lowe returned to defendant's house and defendant took the plants into his barn.

Defendant took a paper bag containing three plastic bags of marijuana from a shelf and asked Lowe if he wanted to buy the contents of the bag plus the plants that were just picked in the field for $75. Lowe offered $50. Defendant took the money from Lowe without responding and put the money in his wallet. Defendant then put the plants into the bag with the packaged marijuana and put the bag in Lowe's truck.

Defendant testified that Lowe asked him to kill another deer for him, in addition to the two he was buying from Danny Hash. While the two men were riding, Lowe continually asked defendant about getting some marijuana. After several requests by Lowe, defendant directed Lowe to a field containing a patch of marijuana he knew of through working for the sheriff. Defendant told Lowe that the marijuana was no good because of frostbite, but Lowe pulled several plants out of the ground and offered to buy them. Defendant refused to sell them but told Lowe he could have

them. Lowe put the plants in his truck. Defendant admits that he then put the plants into a brown bag that was lying in Lowe's truck. After returning to defendant's house, Lowe again offered to buy the plants. Defendant refused to accept any money for the marijuana although Lowe continued to offer $50 to defendant. Defendant last saw the $50 in Lowe's shirt pocket. In addition to testifying, defendant called six of his associates, including his live-in girlfriend, to bolster his testimony and to impeach agent Lowe's credibility.

■ An extended discussion regarding the sufficiency of the evidence to establish that a sale of marijuana took place is not necessary. Defendant's first point is a contention that the testimony of Lowe, when balanced against the testimony of the defendant and his witnesses, was not credible. The court was entitled to believe all, part or none of the testimony of any witness. *State v. Hunter*, 782 S.W.2d 95, 99 (Mo.App.1989). The record demonstrates why the trial court found the defendant's version was not credible. Much of defendant's testimony was inherently incredible. His reliability as a witness was impeached by his own self-contradictions. Those contradictions are exemplified by the following. On direct examination, defendant, to bolster his version of events, unambiguously stated he did not carry money in his billfold and has "not used his billfold in years." On cross-examination, when attempting to establish a date, the defendant replied, "If I can look in my billfold, I may have a check stub".

■ In determining the sufficiency of the evidence, this court must accept as true all evidence in the record that tends to prove defendant's guilt, together with any favorable inferences that can be drawn from the evidence. *State v. Barnett*, 767 S.W.2d 38, 39 (Mo. banc 1989). Lowe's testimony that a sale occurred is sufficient to sustain the conviction. *State v. Ferguson*, 780 S.W.2d 112, 113 (Mo.App.1989).

■ As part of his contention the evidence is insufficient the defendant argues the paper sack and marijuana were improperly admitted in evidence because a chain

of custody was not established. "The trial court has the discretion to determine whether a chain of custody which will allow the admission of physical evidence has been sufficiently established." *State v. Turnbough*, 729 S.W.2d 37, 39 (Mo.App.1987). See also *State v. Shelli*, 675 S.W.2d 79, 81 (Mo.App.1984). "The court must be able to find that the evidence provides 'reasonable assurance' that the exhibits were in the same and in like condition when admitted as when received from defendant." *Turnbough* at 40. Lowe testified that he took the marijuana in the sack from defendant's house to the chemist. He stopped in Warsaw to call his supervisor, Calvin Christensen. Christensen met Lowe and the two men drove to Jefferson City with the marijuana. Lowe's supervisor turned the marijuana over to the chemist. The chemist testified that the plants given to him by Christensen were marijuana. Moreover, Lowe, without objection, testified that the state's exhibits, presented by the chemist, were the same sack and contents that he had taken to Jefferson City. This evidence established "reasonable assurance" of a reliable chain of custody. *Turnbough*.

■ Defendant's second point is that the trial court erred in admitting the testimony of rebuttal witness Becky Doss. Doss was the prosecuting attorney's secretary. Doss testified that defendant's girlfriend, Karen Busboom, had called Doss at the prosecutor's office on the day of defendant's preliminary hearing. During that call, Busboom informed Doss that defendant sold drugs in the past and told her the name of an individual and gave a description of another individual to whom the defendant had sold drugs. Defendant argues the testimony of Becky Doss was inadmissible because it constituted improper impeachment on a collateral matter. A collateral matter is one of no material significance in the case or is not pertinent to the issues as developed. *State v. Roberts*, 778 S.W.2d 763, 765 (Mo.App.1989). See also *State v. Shaw*, 694 S.W.2d 857, 859 (Mo. App.1985). Defendant called Karen Busboom who testified that to her knowledge defendant never smoked or sold marijuana. Defendant used Karen Busboom's testimo-

ny to enhance his own credibility. Defendant opened up the issue of the credibility of Busboom's testimony. The testimony of Doss rebutting Busboom's testimony was clearly pertinent to the issue defendant developed. *Roberts* at 765.

By his last point, defendant argues the state failed to reveal relevant information concerning plea bargains made with Danny Hash and Randy Gates. Danny Hash did testify for the state. However, he repeatedly testified the state had not made any promises or deals in exchange for his testimony. There was no evidence to the contrary.

■ Hash did indicate he believed his testimony might help him in the disposition of his own charges. The duty to disclose, however, "does not apply to a witness' independent anticipation of the possibility of some recognition of his willingness to testify." *McCollum v. State*, 651 S.W.2d 674, 675 (Mo.App.1983). The belief must be reasonably based upon conduct of the prosecutor. *Id.* There was no evidence that Hash's belief was based on any action by the state. Defendant's argument concerning Hash has no merit.

■ Defendant next argues the state did not reveal a deal entered into with Randy Gates in exchange for this testimony. Mr. Gates was a defense witness and not a witness for the state. The discovery rule relied on by defendant is irrelevant. Rule 25.03(A)(1) states that the state shall disclose to defense on request information in its possession regarding witnesses the *state intends to call*. The Rule does not require the state to reveal agreements made with defense witnesses. The final point is denied and the judgment is affirmed.

PREWITT and CROW, JJ., concur.